1  Jeffrey S. Posin, Esq.
   Nevada Bar No: 6457
2  PO Box 531468
   Henderson, Nevada 89053-1468
3  Phone: (702) 396-8888
   Facsimile: (702) 837-1650

4  Attorney for Debtors,

5

6

7                    UNITED STATES BANKRUPTCY COURT

8                         DISTRICT OF NEVADA

9  In re                                    Case No: BKS-11-18679-BAM
                                            Chapter 13
10 ABDEL ASSAHOURI and                      Trustee: Kathleen A. Leavitt
   MONA A. ASSAHOURI,
11                                          **DEBTORS' MOTION FOR AN ORDER TO
              Debtors.                      COMPEL ABANDONMENT OF REAL
12                                          PROPERTY PURSUANT TO 11 U.S.C.
                                            §544**
13
                                            Hearing Date: May 31, 2012
14                                          Hearing Time: 2:30 p.m.

15       COMES NOW, ABDEL ASSAHOURI and MONA A. ASSAHOURI, (hereinafter

16 referred to as "Debtors"), by and through their counsel of record, Jeffrey S. Posin, Esq.

17 and hereby files their Motion for an Order to Compel Abandonment of Real property

18 Pursuant to 11 U.S.S.§554.

19       Debtors, through undersigned counsel, are seeking an Order to Compel

20 Abandonment Real Property located at 9816 Almenia Street, Las Vegas, Nevada 89178

21 (hereinafter referred to as "Property"), so that a "short sale" can be effectuated.

22                            **LEGAL ARGUMENT**

23       **§554 Abandonment of property of the estate.**

24       b.    On request of a party in interest and after notice and a hearing, the court
               may order the trustee to abandon any property of the estate that is
25             burdensome to the estate or that is of inconsequential value and benefit to
               the estate.

26       In the case-at-bar, the Property is being sold for less than is owed. Schedule D of

27 Debtors' Petition evidences that Debtors owe approximately $320,250.00 (First

28

                                        -1-

1  Mortgage) to Indymac Bank. Attached hereto as Exhibit "1" is a true and correct copy of

2  the Residential Purchase Agreement that was issued by Keller Williams Realty on or

3  about March 13, 2012. According to this Agreement, the Purchasers have agreed to

4  purchase the Property for $240,000.00. Debtors will not be receiving any proceeds from

5  this sale.

6      Therefore, Debtors are requesting abandonment of the Property as it literally has

7  no value. Thus, under 11 U.S.C. §554(b), abandonment is proper as this Property "is of

8  inconsequential value and benefit to estate".

9      **WHEREFORE, DEBTORS** pray for relief as follows:

10      1. For an Order to Compel Abandonment Real Property located at 9816 Almenia

11          Street, Las Vegas, Nevada 89178.

12  Dated this 17th day of April, 2012.

13                            JEFFREY S. POSIN AND ASSOCIATES

14                            /s/ Jeffrey S. Posin, Esq.
                          JEFFREY S. POSIN, ESQ.

15                            Nevada Bar No.: 6457
                          Post Office Box 531468

16                            Henderson, NV 89053-1468

17                            Attorney for Debtors

18

19

20

21

22

23

24

25

26

27

28

-2-

# EXHIBIT "1"



## RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions and Earnest Money Receipt)

Date: 2/28/12

**CHRISTOPHER BURNS** ("Buyer"), hereby offers to purchase
**9816 ALMENIA ST.** ("Property"),
within the city or unincorporated area of **LAS VEGAS**, County of **CLARK**,
State of Nevada, Zip **89178**, A.P.N. # **178-28-110-069** for the purchase price of $ **240,000.**,
( **TWO HUNDRED FORTY THOUSAND** dollars) ("Purchase Price") on the terms
and conditions contained herein:
BUYER ☑ does -OR- ☐ does not intend to occupy the Property as a residence.

### Buyer's Offer

**I.    FINANCIAL TERMS & CONDITIONS:**

$ **2000.00**    A.  EARNEST MONEY DEPOSIT ("EMD") is ☑ presented with this offer -OR- ☐ _____

*(NOTE: It is a felony in the State of Nevada-punishable by up to four years in prison and a $5,000 fine-to write a check for which there are insufficient funds. NRS 193.130(2)(d).)*

$ **0**    B.  ADDITIONAL DEPOSIT to be placed in escrow on or before (date) _____, the
additional deposit ☐ will -OR- ☐ will not be considered part of the EMD. (Any conditions on the additional deposit should be set forth in Section 28 herein.)

$ **231,600.00**    C.  THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A NEW LOAN ON
THE FOLLOWING TERMS AND CONDITIONS:
☐ Conventional, ☑ FHA, ☐ VA, ☐ Other (specify) _____
Interest ☑ Fixed rate, **30** years -OR- ☐ Adjustable Rate, _____ years, initial rate of interest not to
exceed **4.5** %, initial monthly payment not to exceed $ **1,774.²²**, not including taxes, insurance
and/or PMI or MIP.

$ **0**    D.  THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO ASSUME THE
FOLLOWING EXISTING LOAN(S):
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____
Interest ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years, initial rate of interest not to
exceed _____ %, Monthly payment not to exceed $ _____, not including taxes, insurance and/or PMI or MIP.

$ **0**    E.  BUYER TO EXECUTE A PROMISSORY NOTE SECURED BY DEED OR TRUST PER TERMS
IN "FINANCING ADDENDUM."

$ **6400.00**    F.  BALANCE OF PURCHASE PRICE (Balance of Down Payment) in Good Funds to be paid prior to
Close of Escrow ("COE").

$ **240,000.00**    G.  TOTAL PURCHASE PRICE. (This price DOES NOT include closing costs, prorations, or other fees
and costs associated with the purchase of the Property as defined herein.)

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  **CHRISTOPHER BURNS**    BUYER(S) INITIALS: _____

Property Address:  **9816 ALMENIA ST.**    SELLER(S) INITIALS: _____

Rev. 12/11    ©2011 Greater Las Vegas Association of REALTORS®    Page 1 of 11

**2. ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

**A. NEW LOAN APPLICATION:** Within **3** _____ business days of Acceptance, Buyer agrees to (1) submit a completed loan application to a lender of Buyer's choice; (2) authorize ordering of the appraisal (per lender's requirements); and (3) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement, in such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer ☑ does -OR- ☐ does not authorize lender to provide loan status updates to Seller's and Buyer's Brokers, as well as Escrow Officer. Buyer agrees to use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

**B. CASH PURCHASE:** Within **0** _____ business days of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

**C. APPRAISAL:** If an appraisal is required as part of this agreement, or requested by Buyer, and if the appraisal is less than the Purchase Price, the transaction will go forward if (1) Buyer, at Buyer's option, elects to pay the difference and purchase the Property for the Purchase Price, or (2) Seller, at Seller's option, elects to adjust the Purchase Price accordingly, such that the Purchase Price is equal to the appraisal. If neither option (1) or (2) is elected, then Parties may renegotiate; if renegotiation is unsuccessful, then either Party may cancel this Agreement upon written notice, in which event the EMD shall be returned to Buyer.

**3. SALE OF OTHER PROPERTY:**

This Agreement
☑ is not -OR-
☐ is contingent upon the sale (and closing) of another property which address is

_____

Said Property
☐ is currently listed
☐ is not -OR- ☐ is
presently in escrow with _____
Escrow Number: _____, Proposed Closing Date: _____

When Buyer has accepted an offer on the sale of this other property, Buyer will promptly deliver a written notice of the sale to Seller. If Buyer's escrow on this other property is terminated, abandoned, or does not close on time, this Agreement will terminate without further notice unless the parties agree otherwise in writing. If Seller accepts a bona fide written offer from a third party prior to Buyer's delivery of notice of acceptance of an offer on the sale of Buyer's property, Seller shall give Buyer written notice of that fact. Within three (3) days of receipt of the notice, Buyer will waive the contingency of the sale and closing of Buyer's other property, or this Agreement will terminate without further notice. In order to be effective, the waiver of contingency must be accompanied by reasonable evidence that funds needed to close escrow will be available and Buyer's ability to obtain financing is not contingent upon the sale and/or close of any other property.

**4. FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(B) of this Agreement, all items are transferred in an "AS IS" condition.

**A.** All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s), window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(s), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);

**B.** The following additional items of personal property: _AS PER MLS #1230346_

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **CHRISTOPHER BURNS**          BUYER(S) INITIALS: _CB_ / ___

Property Address: **9816 ALMENIA ST.**          SELLER(S) INITIALS: ___ / ___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**5. ESCROW:**

**A. OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after execution of this Agreement ("Opening of Escrow"), at _____ COOPER CASTLE _____ title or escrow company ("Escrow Company" or "ESCROW HOLDER") with _____ DENISE WAUGH _____ ("Escrow Officer") (or such other escrow offices as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement and receipt of the EMD (if applicable). ESCROW HOLDER is instructed to notify the Parties (through their respective Brokers) of the opening date and the Escrow Number.

**B. EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited per the Earnest Money Receipt Notice and Instructions contained herein.

**C. CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on (date) **30 DAYS UPON BANK ACCEPTANC** . If the designated date falls on a weekend or holiday, COE shall be the next business day.

**D. IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation which became effective January 1, 1987, that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

**E. FIRPTA:** If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required. (See 26 USC Section 1445).

**6. TITLE INSURANCE:** Upon COE, Buyer will be provided with the following type of title insurance policy: ☐ CLTA; ☒ ALTA-Residential; -OR- ☐ ALTA-Extended (including a survey, if required).

**7. PRORATIONS, FEES AND EXPENSES (Check appropriate box):**

**A. TITLE AND ESCROW FEES:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | N/A |
|---|---|---|---|---|
| Escrow Fees | ☐ | ☒ | ☒ | ☐ |
| Lender's Title Policy | ☐ | ☒ | ☐ | ☐ |
| Owner's Title Policy | ☒ | ☐ | ☐ | ☐ |
| Real Property Transfer Tax | ☐ | ☐ | ☐ | ☒ |
| Other: _____ | ☐ | ☐ | ☐ | ☐ |

**B. PRORATIONS:**

| TYPE | PAID BY SELLER | PRORATE | N/A |
|---|---|---|---|
| CIC (Common Interest Community) Assessments | ☐ | ☐ | ☒ |
| CIC Periodic Fees | ☐ | ☒ | ☐ |
| SIDs / LIDs / Bonds / Assessments | ☐ | ☐ | ☒ |
| Sewer Use Fees | ☐ | ☒ | ☐ |
| Trash Service Fees | ☐ | ☒ | ☐ |
| Real Property Taxes | ☐ | ☒ | ☐ |
| Other: _____ | ☐ | ☐ | ☒ |

All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplementals or adjustments that occur after COE will be handled by the parties outside of Escrow.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **CHRISTOPHER BURNS** _____ BUYER(S) INITIALS: _____ /

Property Address _____ **9816 ALMENIA ST.** _____ SELLER(S) INITIALS: _____ / _____

Rev. 12/11    ©2011 Greater Las Vegas Association of REALTORS®    Page 3 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

C.   **INSPECTIONS AND RELATED EXPENSES** (See also Section 12): Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water) are turned on and supplied to the Property within two (2) business days after execution of this Agreement, to remain on until COB. (It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections.)

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED | N/A |
|---|---|---|---|---|---|
| Appraisal | ☐ | ☒ | ☐ | ☐ | ☐ |
| CIC Capital Contribution | ☐ | ☐ | ☐ | ☐ | ☒ |
| CIC Transfer Fees | ☒ | ☐ | ☐ | ☐ | ☐ |
| CLUB Report ordered by Seller | ☐ | ☐ | ☐ | ☐ | ☒ |
| Energy Audit | ☐ | ☐ | ☐ | ☐ | ☒ |
| Fungal Contaminant Inspection | ☐ | ☐ | ☐ | ☐ | ☒ |
| Home Inspection | ☐ | ☒ | ☐ | ☐ | ☐ |
| Mechanical Inspection | ☐ | ☐ | ☐ | ☐ | ☒ |
| Oil Tank Inspection | ☐ | ☐ | ☐ | ☐ | ☒ |
| Pool/Spa Inspection | ☐ | ☐ | ☐ | ☐ | ☒ |
| Roof Inspection | ☐ | ☒ | ☐ | ☐ | ☐ |
| Septic Inspection (requires pumping) | ☐ | ☐ | ☐ | ☐ | ☒ |
| Septic Lid Removal | ☐ | ☐ | ☐ | ☐ | ☒ |
| Septic Pumping | ☐ | ☐ | ☐ | ☐ | ☒ |
| Soils Inspection | ☐ | ☐ | ☐ | ☒ | ☐ |
| Structural Inspection | ☐ | ☐ | ☐ | ☐ | ☒ |
| Survey          (type) | ☐ | ☐ | ☐ | ☐ | ☒ |
| Termite/Pest Inspection | ☐ | ☐ | ☐ | ☐ | ☒ |
| Well Inspection (Quantity) | ☐ | ☐ | ☐ | ☐ | ☒ |
| Well Inspection (Quality) | ☐ | ☐ | ☐ | ☐ | ☒ |
| Wood-Burning Device/Chimney Inspection | | | | | |
| (includes cleaning) | ☐ | ☒ | ☐ | ☐ | ☐ |
| Other: | ☐ | ☐ | ☐ | ☐ | ☒ |
| Re-Inspections | ☐ | ☐ | ☐ | ☐ | ☒ |

If any inspection is not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COB (along with the applicable invoice).

D.   **CERTIFICATIONS**: Notwithstanding the elections below, in the event an inspection reveals problems with any of the foregoing, Buyer reserves the right to require a certification,

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|---|---|---|---|
| Fungal Contaminant | ☐ | ☐ | ☐ | ☒ |
| Roof | ☒ | ☐ | ☐ | ☐ |
| Septic | ☐ | ☐ | ☐ | ☒ |
| Well | ☐ | ☐ | ☐ | ☒ |
| Wood-Burning Device/Chimney Certification | ☒ | ☐ | ☐ | ☐ |
| Other: | ☐ | ☐ | ☐ | ☒ |

The foregoing expenses for certifications will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COB (along with the applicable invoice). A certification is not a warranty.

E.   **SELLER'S ADDITIONAL COSTS AND LIMIT OF LIABILITY**: Seller agrees to pay a maximum amount of $ _0_ to correct defects and/or requirements disclosed by inspection reports, appraisals, and/or certifications. It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use. Buyer reserves the right to request additional repairs, which may exceed the above-stated amount, based upon the Seller's Real Property

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: __CHRISTOPHER BURNS__                    BUYER(S) INITIALS: _____

Property Address: __8816 ALMENIA ST.__                    SELLER(S) INITIALS: _____

Rev. 12/11          ©2011 Greater Las Vegas Association of REALTORS®          Page 4 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
Unified

1  Disclosure or items which materially affect value or use of the Property revealed by an inspection, certification or appraisal.
2  Items of a general maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at
3  the time of Acceptance and which are not expressly addressed in this section are deemed accepted by the Buyer, except as
4  otherwise provided in this section. The Brokers herein have no responsibility to assist in the payment of any repair, correction
5  or deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer
6  and Seller or requested by one party.

7
8      F.    LENDER AND CLOSING FEES:  In addition to Seller's expenses above, Seller will contribute
9  $ 7200 _____ to Buyer's Lender's Fees and/or Buyer's Title and Escrow Fees ■ including -OR- ☐ excluding
10 costs which Seller must pay pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have
11 different appraisal and financing requirements, which will affect the parties' rights and costs under this Agreement.

12
13     G.   HOME PROTECTION PLAN:  Buyer and Seller acknowledge that they have been made aware of Home
14 Protection Plans that provide coverage to Buyer after COE. Buyer ■ waves -OR- ☐ requires a Home Protection Plan with
15 N/A _____ . ☐ Seller -OR- ☐ Buyer will pay for the Home Protection
16 Plan at a price not to exceed $ 0 _____ . Buyer will order the Home Protection Plan. Neither Seller nor Brokers make
17 any representation as to the extent of coverage or deductibles of such plans. ESCROW HOLDER is not responsible for
18 ordering the Home Protection Plan.

19
20 8.     TRANSFER OF TITLE:  Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
21 tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes,
22 (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
23 utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COE. Buyer is advised the
24 Property may be reassessed after COE which may result in a real property tax increase or decrease.

25
26 9.     COMMON-INTEREST COMMUNITIES:  If the Property is subject to a Common Interest Community ("CIC"),
27 Seller or his authorized agent shall request the CIC documents and certificate listed in NRS 116.4109 (collectively, the "resale
28 package") within two (2) business days of Acceptance and provide the same to Buyer within one (1) business day of Seller's
29 receipt thereof. Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the
30 date of receipt of the resale package. If Buyer does not receive the resale package within fifteen (15) calendar days of
31 Acceptance, this Agreement may be cancelled in full by Buyer without penalty. If Buyer elects to cancel this Agreement
32 pursuant to this section, he must deliver, via hand delivery or prepaid U.S. mail, a written notice of cancellation to Seller or his
33 authorized agent identified in the Confirmation of Representation at the end of this Agreement. Upon such written cancellation,
34 Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW
35 HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package
36 will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COE.

37
38 10.    DISCLOSURES:  Within five (5) calendar days of Acceptance of this Agreement, Seller will provide the
39 following Disclosures and/or documents (each of which is incorporated herein by this reference). Check applicable boxes.
40     ☐ Construction Defect Claims Disclosure, if Seller has marked "Yes" to Paragraph 1(d) of the
41     Seller Real Property Disclosure Form (NRS 40.688)
42     ☐ Fungal (Mold) Notice Form (not required by Nevada law)
43     ☐ Lead-Based Paint Disclosure and Acknowledgment, required if constructed before 1978 (24 CFR 745.113)
44     ☐ Pest Notice Form (not required by Nevada law)
45     ☐ Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer
46     ☐ Open Range Disclosure (NRS 113.065)
47     ■ Seller Real Property Disclosure Form (NRS 113.130)
48     ■ Other (list) SHORT SALE ADDENDUM

49
50
51
   Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
   particular paragraph is otherwise modified by addendum or counteroffer.

   Buyer's Name: CHRISTOPHER BURNS                     BUYER(S) INITIALS: [initials]

   Property Address: 9916 ALMENIA ST.                  SELLER(S) INITIALS: [initials]
   Rev. 12/11                ©2011 Greater Las Vegas Association of REALTORS®              Page 8 of 11
                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com           Untitled

11. **ADDITIONAL DISCLOSURES:**

A. **LICENSEE DISCLOSURE OR INTEREST (BUYER):** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. N/A _____ is a licensed real estate agent in the State(s) of _____ N/A _____, and has the following interest, direct or indirect, in this transaction: ☐ Principal (Buyer) -OR- ☐ family or firm relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship) _____ N/A _____

B. In addition, for NEW CONSTRUCTION, to the extent applicable, Seller will provide: Public Offering Statement (NRS 116.4108); Electric Transmission Lines (NRS 119.1835); Public Services and Utilities (NRS 119.183); Initial Purchaser Disclosure (NRS 113); Construction Recovery Fund (NRS 624); Gaming Corridors (NRS 113.070); Water/Sewage (NRS 113.060); Impact Fees (NRS 278B.320); Surrounding Zoning Disclosure (NRS 113.070); FTC Insulation Disclosure (16 CFR 460.16); and Other: N/A

C. **AIRPORT NOISE:** Buyer hereby acknowledges the proximity of various overflight patterns, airports (municipal, international, military and/or private) and helipads. Buyer also fully understands that existing and future noise levels at this location, associated with existing and future airport operations, may affect the livability, value and suitability of the Property for residential use. Buyer also understands that these airports have been at their present location for many years, and that future demand and airport operations may increase significantly. For further information, contact your local department of aviation or the Federal Aviation Administration.

D. **FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:** All properties are offered without regard to race, color, religion, sex, national origin, ancestry, handicap or familial status and any other current requirements of federal or state fair housing law.

12. **BUYER'S DUE DILIGENCE:**

A. **DUE DILIGENCE PERIOD:** Buyer shall have 10 _____ calendar days from Acceptance to complete Buyer's Due Diligence. Buyer shall ensure that all inspections and certifications are initiated in a timely manner as to complete the Due Diligence in the time outlined herein. (If utilities are not supplied by the deadline referenced herein or if the disclosures are not delivered to Buyer by the deadline referenced herein, then Buyer's Due Diligence Period will be extended by the same number of calendar days that Seller delayed supplying the utilities or delivering the disclosures, whichever is longer.) During this period Buyer shall have the exclusive right at Buyer's discretion to cancel this Agreement. In the event of such cancellation, unless otherwise agreed herein, the EMD will be refunded to Buyer. If Buyer provides Seller with notice of objections, the Due Diligence Period will be extended by the same number of calendar days that it takes Seller to respond in writing to Buyer's objections. If Buyer fails to cancel this Agreement within the Due Diligence Period (as it may be extended), Buyer will be deemed to have waived the right to cancel under this section.

B. **PROPERTY INSPECTION/CONDITION:** During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to have non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer or third parties present at Buyer's request to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools; proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation; construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **CHRISTOPHER BURNS** _____ BUYER(S) INITIALS: _____

Property Address: **9816 ALMENIA ST** _____ SELLER(S) INITIALS: _____

Rev. 12/11

©2011 Greater Las Vegas Association of REALTORS® Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplogix.com

Page 6 of 11
Unfixed

C.    PRELIMINARY TITLE REPORT: Within ten (10) business days of Opening of Escrow, Title Company shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5) business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such exception removed or to correct each such other matter as aforesaid, Buyer shall have the option to: (a) terminate this Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted Exceptions."

13.    WALK-THROUGH INSPECTION OF PROPERTY: Buyer is entitled under this Agreement to a walk-through of the Property within ___2___ calendar days prior to COB to ensure the Property and all major systems, appliances, heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure Statement, and that the Property and Improvements are in the same general condition as when this Agreement was signed by Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on. If any systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other obligations. If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection, except as otherwise provided by law.

14.    DELIVERY OF POSSESSION: Seller shall deliver the Property along with any keys, alarm codes, garage door opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COB. Seller agrees to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than ☐ COB -OR- ☐ _____ . In the event Seller does not vacate the Property by this time, Seller shall be considered a trespasser and shall be liable to Buyer for the sum of $ 0 _____ per calendar day in addition to Buyer's legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be considered abandoned by Seller.

15.    RISK OF LOSS: Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift to Buyer.

16.    ASSIGNMENT OF THIS AGREEMENT: Unless otherwise stated herein, this Agreement is non-assignable by Buyer.

17.    CANCELLATION OF AGREEMENT: In the event this Agreement is properly cancelled in accordance with the terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction (unless otherwise provided herein).

18.    DEFAULT:

A.    MEDIATION: Before any legal action is taken to enforce any term or condition under this Agreement, the parties agree to engage in mediation, a dispute resolution process, through GLVAR. Not withstanding the foregoing, in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply.

B.    IF SELLER DEFAULTS: If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: CHRISTOPHER BURNS                    BUYER(S) INITIALS: _CB_ / ___

Property Address: 9816 ALMENIA ST.                    SELLER(S) INITIALS: ___ / ___

Produced with zipForm® by zipLogic 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    Untitled

C.   IF BUYER DEFAULTS: If Buyer defaults in performance under this Agreement, Seller shall have one of the following legal recourses against Buyer (initial one only):

[ CB ] [ ____ ] As Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

-OR-

[ ____ ] [ ____ ] Seller shall have the right to recover from Buyer all of Seller's actual damages that Seller may suffer as a result of Buyer's default including, but not limited to, commissions due, expenses incurred until the Property is sold to a third party and the difference in the sales price.

## Instructions to Escrow

19.   ESCROW: If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct. If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves. Upon the entry of an order authorizing such interpleader, ESCROW HOLDER shall be fully released and discharged and obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement. In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

20.   UNCLAIMED FUNDS: In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

21.   BROKER FEES: Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourses against Seller for any commission due. In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will -OR- ☒ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.

22.   WAIVER OF CLAIMS: Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein. Buyer agrees to satisfy himself, as to the condition of the Property, prior to COE. Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:   CHRISTOPHER BURNS                          BUYER(S) INITIALS: _CB_ / ____

Property Address:   9818 ALMENIA ST.                        SELLER(S) INITIALS: ____ / ____

Rev. 12/11                ©2011 Greater Las Vegas Association of REALTORS®                Page 8 of 11
                                                                                          Unified
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

1  1. Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to
2  make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims
3  against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c)
4  environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's
5  proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to
6  Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to
7  conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is
8  limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.
9

## Other Matters

10
11  23.  **DEFINITIONS:** "Acceptance" means the date that both parties have consented to and received a final, binding
12  contract by affixing their signatures to this Agreement and all counteroffers. "Agent" means a licensee working under a Broker
13  or licensees working under a developer. "Agreement" includes this document as well as all accepted counteroffers and
14  addenda. "Bona Fide" means genuine. "Buyer" means one or more individuals or the entity that intends to purchase the
15  Property. "Broker" means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real
16  estate agents associated therewith). "Business Day" excludes Saturdays, Sundays, and legal holidays. "Calendar Day" means
17  a calendar day from/to midnight unless otherwise specified. "CFR" means the Code of Federal Regulations. "CIC" means
18  Common Interest Community (formerly known as "HOA" or homeowners associations). "CIC Capital Contribution" means
19  a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. "CIC Transfer Fees"
20  means the administrative service fee charged by a CIC to transfer ownership records. "CLUE" means Comprehensive Loss
21  Underwriting Exchange. "Close of Escrow (COE)" means the time of recordation of the deed in Buyer's name. "Deliver"
22  means the failure of a Party to observe or perform any of its material obligations under this Agreement. "Delivered" means
23  personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or
24  mailed by regular mail. "Down Payment" is the Purchase Price less loan amount(s). "EMD" means Buyer's earnest money
25  deposit. "Escrow Holder" means the neutral party that will handle the escrow. "FHA" is the U.S. Federal Housing
26  Administration. "GLVAR" means the Greater Las Vegas Association of REALTORS®. "Good Funds" means an acceptable
27  form of payment determined by ESCROW HOLDER in accordance with NRS 645A.171. "IRC" means the Internal Revenue
28  Code (tax code). "LID" means Limited Improvement District. "N/A" means not applicable. "NAC" means Nevada
29  Administrative Code. "NRS" means Nevada Revised Statues, as Amended. "Party" or "Parties" means Buyer and Seller.
30  "PITI" means principal, interest, taxes, and hazard insurance. "PMI" means private mortgage insurance. "PST" means
31  Pacific Standard Time, and includes daylight savings time if in effect on the date specified. "PTR" means Preliminary Title
32  Report. "Property" means the real property and any personal property included in the sale as provided herein. "Receipt"
33  means delivery to the party or the party's agent. "Seller" means one or more individuals or the entity that is the owner of the
34  Property. "SID" means Special Improvement District. "Title Company" means the company that will provide title insurance.
35  "USC" is the United States Code. "VA" is the Veterans Administration.
36
37  24.  **SIGNATURES, DELIVERY, AND NOTICES:**
38   A.  This Agreement may be signed by the parties on more than one copy, which, when taken together, each
39  signed copy shall be one complete form. This Agreement (and documents related to any resulting transaction) may be
40  signed by the parties manually or digitally. Facsimile signatures may be accepted as original.
41
42   B.  Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for
43  Seller or Buyer if represented.
44
45   C.  Except as otherwise provided in Section 9, when a Party wishes to provide notice as required in this
46  Agreement, such notice shall be sent regular mail, personal delivery, by facsimile, overnight delivery and/or by email to the
47  Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read
48  receipt confirmed in the case of email. Any cancellation notice shall be contemporaneously faxed to Escrow.
49
50  25.  **IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party
51  electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost
52  to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.
53
54  Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
  particular paragraph is otherwise modified by addendum or counteroffer.

| | |
|---|---|
| Buyer's Name:  **CHRISTOPHER BURNS** | BUYER(S) INITIALS: |
| Property Address  **9816 ALMENIA ST.** | SELLER(S) INITIALS |
| **Rev. 12/11** | Page 9 of 11 |

©2011 Greater Las Vegas Association of REALTORS®

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

26.   OTHER ESSENTIAL TERMS: Time is of the essence. No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties agree that the county and state in which the Property is located is the appropriate forum for any action relating to this Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorneys fees and costs incurred by such prevailing party.

THIS IS A LEGALLY BINDING CONTRACT. All parties are advised to seek independent legal and tax advice to review the terms of this Agreement.

NO REAL ESTATE BROKER/AGENT MAY SIGN FOR A PARTY TO THIS AGREEMENT UNLESS THE BROKER OR AGENT HAS A PROPERLY EXECUTED POWER OF ATTORNEY TO DO SO.

THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

27.   ADDENDUM(S) ATTACHED: _____

_____

28.   ADDITIONAL TERMS: **IN THE EVENT THAT THE SHORT SALE IS NOT APPROVED BY THE BA BUYER'S EARNEST MONEY TO BE REFUNDED IN FULL:**

_____

_____

_____

_____

_____

_____

_____

### Earnest Money Receipt

BUYER'S AGENT ACKNOWLEDGES RECEIPT FROM BUYER HEREIN of the sum of $ 2000 evidenced by ☐ Cash,   ☐ Cashier's Check, ☑ Personal Check, or ☐ Other _____ payable to TITLE COMPANY _____, Upon Acceptance, Earnest Money to be deposited within ONE (1) business day, with ☑ Escrow Holder, ☐ Buyer's Broker's Trust Account, - OR - ☐ Seller's Broker's Trust Account.

Date: 3/7/12   Signed: _____   Buyer's Agent ERNESTO AHUMADA

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:   CHRISTOPHER BURNS                                    BUYER(S) INITIALS: _____

Property Address: _9816 ALMENIA ST._                                 SELLER(S) INITIALS: _____

Rev. 12/11          ©2011 Greater Las Vegas Association of REALTORS®
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 13 of 11
Untitled

## Buyer's Acknowledgement of Offer

Upon Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.

CHRISTOPHER BURNS    2/6/2012   5:00 ☐ AM ☑ PM
**Buyer's Signature**    **Buyer's Printed Name**    **Date**    **Time**

_____    _____    _____ : _____ ☐ AM ☐ PM
**Buyer's Signature**    **Buyer's Printed Name**    **Date**    **Time**

Seller must respond by: __5__ ☐ AM ☑ PM on (month) __07__ , (day) __10__ , (year) __12__ . Unless this Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and time, this offer shall lapse and be of no further force and effect.

Confirmation of Representation: The Buyer is represented in this transaction by:

Buyer's Broker: CHERYL SMITH      Agent's Name: ERNESTO AHUMADA
Company Name: REALTY ONE GROUP      Agent's Public ID: 314707
Phone: 702-326-4126      Office Address: 10750 W. CHARLESTON BLVD.
Email: ERNESTO@LVTEAMREALTY.COM      City, State, Zip: LAS VEGAS, NV 89135
Fax: 866-632-2044

## Seller's Response

☐ **ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and attachments.
☑ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.
☐ **REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein is not accepted.

**FIRPTA DECLARATION:** Pursuant to Section 5.B. herein, Seller declares that he/she
☐ Is not -OR-
☐ Is a foreign person therefore subjecting this transaction to FIRPTA withholding.

_____    Abdel Assghour    3/13/12   1:15 ☐ AM ☐ PM
**Seller's Signature**    **Seller's Printed Name**    **Date**    **Time**

_____    Mona Assghouri    3/13/12   1:15 ☐ AM ☐ PM
**Seller's Signature**    **Seller's Printed Name**    **Date**    **Time**

Confirmation of Representation: The Seller is represented in this transaction by:

Seller's Broker: CANDACE DOYLE      Agent's Name: DALE SNYDER
Company Name: KELLER WILLIAMS REALTY      Office Address: 3650 S. DURANGO DR
Phone: 702-320-6205      City, State, Zip: LAS VEGAS, NV
Email: TRANSACTIONCOORDINATOR@DALESNYDER.CC      Fax: 702-476-1733

**LICENSEE DISCLOSURE OF INTEREST (SELLER):** Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. N/A
N/A _____ is a licensed real estate agent in the State(s) of N/A _____ , and has the following interest, direct or indirect, in this transaction: ☐ Principal (Seller) -OR- ☐ family or firm relationship with Seller or ownership interest in Seller (if Seller is an entity): (specify relationship) N/A

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: CHRISTOPHER BURNS      BUYER(S) INITIALS: /

Property Address: 9916 ALMENIA ST.      SELLER(S) INITIALS: /
Rev. 12/11

©2011 Greater Las Vegas Association of REALTORS®    Page 11 of 11
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Unititled

 **SHORT SALE ADDENDUM TO PURCHASE AGREEMENT**
(and Joint Escrow Instructions) 

1  In reference to the Purchase Agreement executed by __CHRISTOPHER BURNS__ as Buyer(s) and

2  __ABDEL & MONA ASSAHOURI__ as Seller(s), dated __2/28/12__ covering the real property at

3  __9919 ALMENIA ST, LAS VEGAS, NV 89120__ , the ☒ Buyer ☐ Seller hereby proposes that the
4  Purchase Agreement be amended as follows:

5
6  **1.    Contingent on Existing Lender Approval.** Buyer and Seller acknowledge that the Purchase
7  Price is less than the amount of Seller's existing loan(s) against the Property due and owing to one or
8  more lender(s) and/or lienholder(s) (collectively, "Lender"). Such a transaction is called a "short sale."
9  Therefore, the Purchase Agreement is contingent upon Seller and/or Seller's Agent obtaining approval
10 from Lender ("Lender Approval") to accept an amount less than what is owed on the Property to release
11 Lender's lien on the Property (subject to parties' approval; see Section 3 below). **SELLER**
12 **UNDERSTANDS AND ACKNOWLEDGES THAT LENDER APPROVAL MAY BE**
13 **CONDITIONED UPON ANY OR ALL OF THE FOLLOWING: (A) MAKING A CASH**
14 **PAYMENT; (B) SIGNING A NEW PROMISSORY NOTE; (C) CONTINUING TO OWE THE**
15 **LENDER THE UNPAID PORTION OF THE LOAN(S); AND (D) OTHER REQUIREMENTS**
16 **MADE BY LENDER.** Seller shall reasonably cooperate with Lender in the short sale process by
17 providing such documentation as may be required by Lender. **BUYER AND SELLER**
18 **UNDERSTAND THAT LENDER APPROVAL MAY TAKE SEVERAL MONTHS TO OBTAIN,**
19 **AND NEITHER THE SELLER, THE ESCROW HOLDER NOR THE BROKERS CAN**
20 **GUARANTEE THE TIMELINESS OF LENDER'S REVIEW, APPROVAL OR REJECTION.**
21 Buyer Initials [ ___ ] [ ___ ]         Seller Initials [ ___ ] [ ___ ]
22
23 **2.    Notice of Lender Approval.** Seller agrees to provide Buyer with written notice of Lender
24 Approval within two (2) business days of Seller's receipt of the approval. Seller may use the "Lender
25 Short Sale Approval Addendum" to facilitate this notice. (For clarification, this is not intended to
26 encompass or delay transmission of any subsequent Lender Approval which may be issued to grant an
27 extension at the end of the transaction pursuant to Section 5 herein.)
28
29 **3.    No Guarantee of Lender Approval.** Buyer and Seller understand that no Lender is required or
30 obligated to accept a short sale, and that Lender Approval may be revoked at any time prior to COE. In
31 addition, the Parties understand that Lender may require that in exchange for approval some terms of the
32 Purchase Agreement be amended. Neither Buyer nor Seller is obligated to agree to any of Lender's
33 proposed terms; either Party may, in its sole discretion, reject the amended terms required by Lender. In
34 such event, the Purchase Agreement shall be void and the Parties agree to execute cancellation
35 instructions with ESCROW HOLDER and return EMD to Buyer. **NEITHER THE BUYER, THE**
36 **SELLER, THE ESCROW HOLDER NOR THE BROKERS IN THIS TRANSACTION HAVE**
37 **ANY CONTROL OVER LENDER APPROVAL, OR ANY ACT, OMISSION OR DECISION BY**
38 **ANY LENDER IN THE SHORT SALE PROCESS.**
39
40 **4.    Time Periods.** Opening escrow and depositing earnest money shall occur as stated in the
41 Purchase Agreement. The time periods specified in the Purchase Agreement for due diligence,
42 disclosures, inspections and other contingencies shall begin (check one):
43 ☒ as stated in the Purchase Agreement;
44 ☐ one (1) calendar day after the Parties' mutual written approval of the Lender Approval;  —OR—
45 ☐ Other _____

Buyer Initials [ ___ ] [ ___ ]                Page 1 of 3                Seller Initials: [ ___ ] [ ___ ]

Short Sale Addendum to Purchase Agreement Rev. 8/10          © 2010 Greater Las Vegas Association of REALTORS®

5.    **Close of Escrow.** Buyer and Seller understand that Lender Approval will include an expiration date by which Close of Escrow ("COE") must occur. A typical Lender Approval is valid for 30 days. The Parties agree to use best efforts to meet the Lender's COE deadline and understand that any extension(s) must be by mutual written agreement and Lender's consent. Buyer understands that Lender may impose additional requirements, such as per diem funds to be paid by Buyer, as additional consideration for any extension(s).

6.    **Other Offers.** Buyer and Seller acknowledge that the Seller's Agent is required by the Multiple Listing Service to place the property in "Contingent" status after the Purchase Agreement is executed, while the transaction is subject to Lender Approval. The Parties understand that additional offers may be received by the Seller's Agent, which must be presented to the Seller pursuant to Nevada law. Seller may choose to accept such subsequent offers as back-up offers.

7.    **Buyer's Right to Cancel.** Buyer may cancel the Purchase Agreement for any reason and without penalty any time after ☐ 45 ☐ 60 ☒ 90 ☐ _____ days from Acceptance if Lender Approval has not been received. Upon Buyer's cancellation, Seller agrees to execute cancellation instructions with ESCROW HOLDER and return EMD to Buyer.

8.    **Foreclosure.** Seller warrants that, at the time of the Purchase Agreement, a Notice of Default and Election to Sell ☐ has not -OR- ☐ has (date: _____) been recorded against the Property. (Information regarding the foreclosure status of a property is available from the County Recorder where the Property is located.) The Parties understand that the recording of a Notice of Default begins a statutory foreclosure period, which lasts a minimum of three (3) months and twenty (20) days. At the end of the foreclosure period, the Property typically will be sold at a Trustee's Sale (foreclosure sale) and Seller will lose all rights and interest in the Property. Buyer and Seller understand that if COE does not occur before a foreclosure sale of the Property, the Purchase Agreement shall be void and escrow shall be cancelled. In such event, ESCROW HOLDER is instructed to return EMD to Buyer without any further instruction from the Parties. The Parties agree to forever release and relieve ESCROW HOLDER from any and all responsibility, liability, costs and/or litigation for the return of the EMD under these conditions.

9.    **Tax Consequences and Advice. A SHORT SALE MAY HAVE SERIOUS AND ADVERSE LEGAL, TAX, CREDIT AND ECONOMIC CONSEQUENCES FOR THE SELLER.** Seller agrees to seek advice from an attorney, a certified public accountant or other qualified professional regarding the legal effect and meaning of a short sale and any Lender Approval.
Seller Initials [☐ _____] [_____]

10.    **Unfulfilled Contingency.** If the Lender rejects the short sale, Seller will promptly notify Buyer of the rejection and the Purchase Agreement shall be void due to the unfulfilled contingency and escrow shall be cancelled. In such event, ESCROW HOLDER is instructed to return EMD to Buyer without any further instruction from the Parties. The Parties agree to forever release and relieve ESCROW HOLDER from any and all responsibility, liability, costs and/or litigation for the return of the EMD under these conditions.

11.    **Other Terms and Conditions:** _____
_____
_____

1
2
3
4
5
6
7
8
9
10  All other terms of the Purchase Agreement, including all prior counteroffers and addenda not modified
11  by this Addendum shall remain the same. To the extent that any terms of this Addendum are in conflict
12  with the Purchase Agreement, this Addendum will control. WHEN PROPERLY COMPLETED,
13  THIS IS A BINDING CONTRACT. IF YOU DO NOT FULLY UNDERSTAND ITS
14  CONTENTS, SEEK COMPETENT LEGAL AND TAX COUNSEL BEFORE SIGNING.
15
16  (X)                                                        3/28/12
17      ☒ Buyer ☐ Seller                                      Date
18
19                                                            6:00 pm
20      ☐ Buyer ☐ Seller                                      Time
21
22      Acceptance:
23
24      ☐ Buyer ☒ Seller                                      3/15/12
25                                                            Date
26
27                                                            1:17 PM
28      ☐ Buyer ☒ Seller                                      Time
29
30      Prepared by: ERNESTO AHUMADA                          702-328-4126
31                   Agent's Name                             Phone

(X)  Buyer Initials [    ] [    ]          Page 3 of 3            Seller Initials [    ] [    ]
Short Sale Addendum to Purchase Agreement Rev. 8/10          © 2010 Greater Las Vegas Association of REALTORS®

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



*A NATIONAL MORTGAGE BANKING COMPANY SINCE 1987*

## Conditional LOAN APPROVAL

**03/13/2012**

**Loan Number: 201002845126**
Approval good for 45 days

**Buyer(s):**
 Christopher Burns
**Subject property:**
**TBD**

**Conditional Loan Approval:**
30 Year Fixed FHA 3.5 % Down
Purchase Price up to:  $ 240,000
Loan Amount :   $ 231,800

## Prior to Doc conditions:

- Title dated within 45 days of closing with sufficient coverage matching ISAOA
- HVCC compliant 1004 with pictures
- H/O ins-Loss payee with correct ISAOA, good for 60 days from funding
- Approved closing agent
- Fully executed Purchase contract signed by seller and buyer
- Proper Income Documentation supporting income on 1003
- **Cleared-** Proof of source funds to close
- **Cleared-** Credit Score Minimum requirement met

This is not a commitment to lend. All conditions listed above must be met for qualification.

*signature*

Erik C Wirtner
Branch Manager
VanDyk Mortgage Corp

153 W Lake Mead Pkwy Ste 2250  Henderson NV 89015
Ph: (702) 982-8870  1  Fax: (702)446-8237  1  Lic #2660

OMB Approval No. 2502-0265

## A. Settlement Statement (HUD-1)

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ RHS | 3. ☒ Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 13679NVNON | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

(13679NVNON 12)

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| Christopher Barns<br>8816 Almenia Street<br>Las Vegas, NV 89178 | Abdel Assahouri and Mona Assahouri<br>8816 Almenia Street<br>Las Vegas, NV 89178 | |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 8816 Almenia Street<br>Las Vegas, NV 89178<br>Clark County, Nevada | The Cooper Castle Law Firm, LLP | |
| | Place of Settlement:<br>5275 South Durango Drive<br>Las Vegas, NV 89113 | (702) 435-4175 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | 240,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/Town taxes | | 406. City/Town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. Sewer | | 409. Sewer | |
| 110. Trash | | 410. Trash | |
| 111. HOA Assessment | | 411. HOA Assessment | |
| 112. | | 412. | |
| 113. | | 413. | |
| **120. Gross amount due from Borrower** | | **420. Gross amount due to Seller** | 240,000.00 |
| **200. Amounts Paid by or In Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 22,454.74 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 207,993.26 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Seller Credit towards Buyers Closing Cost | | 506. Seller Credit towards Buyers Closing Cost | 7,200.00 |
| 207. | | 507. Dep. disbursed as proceeds | |
| 208. Seller Credit for Owners Policy | | 508. Seller Credit for Owners Policy | 1,128.00 |
| 209. Seller Credit for Transfer Tax | | 509. Seller Credit for Transfer Tax | 1,224.00 |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for Borrower** | | **520. Total reduction amount due Seller** | 240,000.00 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement from/to Seller** | |
| 301. Gross amount due from Borrower (Line 120) | | 601. Gross amount due to Seller (Line 420) | 240,000.00 |
| 302. Less amount paid by/for Borrower (Line 220) | ( ) | 602. Less reductions due Seller (Line 520) | ( 240,000.00) |
| **303. CASH FROM BORROWER** | | **603. CASH TO/FROM SELLER** | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Printed on 4/5/2012 at 11:52:15AM   13679NVNON12

HUD-1, Page 1

**L. Settlement Charges**

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Real Estate Broker Fees | $16,800.00 | | | |
| *Division of commission (line 700) as follows:* | | | | |
| 701. $ 8,400.00 | to Keller Williams Realty | | | |
| 702. $ 8,400.00 | to Realty One Group | | | |
| 703. Commission paid at settlement | | | | 16,800.00 |
| 704. Negotiation Commission to Keller Williams Realty | | | | 1,485.00 |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Our origination charge | | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | (from GFE #2) | | |
| 803. Your adjusted origination charges | | (from GFE #A) | | |
| 804. Appraisal fee | | (from GFE #3) | | |
| 805. Credit report | | (from GFE #3) | | |
| 806. Tax service | | (from GFE #3) | | |
| 807. Flood certification | | (from GFE #3) | | |
| 808. | | | | |
| **900. Items Required by Lender to be Paid in Advance** | | | | |
| 901. Interest from  to  @ $        /day (    days @        %) | | (from GFE #10) | | |
| 902. Mortgage insurance premium  for      month to | | (from GFE #3) | | |
| 903. Homeowner's insurance     for      year to | | (from GFE #11) | | |
| 904.              for      year to | | | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Initial deposit for your escrow account | | (from GFE #9) | | |
| 1002. Homeowner's insurance      months @ $      per month | | | | |
| 1003. Mortgage insurance      months @ $      per month | | | | |
| 1004. Property taxes      months @ $      per month | | | | |
| 1005.      months @ $      per month | | | | |
| 1006.      months @ $      per month | | | | |
| 1007.      months @ $      per month | | | | |
| **1100. Title Charges** | | | | |
| 1101. Title services and lender's title insurance to The Cooper Castle L | | (from GFE #4) | | |
| 1102. Settlement or closing fee to The Cooper Castle Law Firm, LLP | | | | 697.50 |
| 1103. Owner's title insurance to The Cooper Castle Law Firm, LLP | | (from GFE #5) | | |
| 1104. Lender's title insurance | | | | |
| 1105. Lender's title policy limit | | | | |
| 1106. Owner's title policy limit | | | | |
| 1107. Agent's portion of the total title insurance premium to Colorado American Title, LL | | | | |
| 1108. Underwriter's portion of the total title insurance premium | | | | |
| 1109. Document Preparation Fee to The Cooper Castle Law Firm, LLP | | | | |
| 1110. Sub Escrow Fee to First American Title Insurance Company | | | | |
| 1111. Endorsement Fee to First American Title Insurance Company | | | | |
| 1112. Courier/Wire Fee to The Cooper Castle Law Firm, LLP | | | | |
| 1113. Notary | | | | |
| 1114. Short Sale Processing Fee to The Cooper Castle Law Firm, LLP | | | | 595.00 |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Government recording charges to First American Title Insurance | | (from GFE #7) | | |
| 1202. Deed $   50.00;   Mortgage $   75.00;   Releases $ | | | | |
| 1203. Transfer taxes to First American Title Insurance Company | | (from GFE #8) | | |
| 1204. County Transfer Tax   Deed $  1,224.00;   Mortgage $ | | | | |
| 1205. State tax/stamps   Deed $ ;   Mortgage $ | | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Required services that you can shop for | | (from GFE #6) | | |
| 1302. Sewer to Clark County Water Reclamation | | | | 229.70 |
| 1303. Trash to Republic Services of Southern NV | | | | 107.85 |
| 1304. Real Property Taxes to Clark County Treasurer | | | | 726.79 |
| 1305. HOA Capital Contribution to Mountains Edge Master | | | | 385.00 |
| 1306. HOA Transfer to Mountains Edge Master | | | | 250.00 |
| 1307. Home Warranty | | | | |
| 1308. SID / LID to Clark County Treasurer - SID | | | | 623.92 |
| 1309. SUB HOA Capital Contribution to Las Colinas HOA | | | | 42.00 |
| 1310. SUB HOA Transfer to Las Colinas HOA | | | | 500.00 |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | | 22,454.74 |



## COUNTER OFFER

## NO. ____1____

ATTENTION: _____Ernesto Ahumada_____   COMPANY: _____Realty One Group_____
                          (Agent)                                                      (Name)
                                                                          Christopher Burns

The ☒ Offer ☐ Counter Offer made by: ☐ Seller ☒ Buyer _____
                                                                                          (Name)
                                                                          9816 Almania Street
to ☒ Buy ☐ Sell the real property commonly known as:_____Las Vegas, NV  89178_____
dated: _____February 26, 2012_____ is not accepted in its present form, but the following Counter Offer
is hereby submitted:
1. All items in the purchase contract requesting seller to pay including HOA &
CIC fees are submitted to the lien holder to pay. Any fees not paid for by the
lien holder will be renegotiated by both parties.
2. Property is sold AS IS and no repairs will be made. Buyer still retains the
right and is encouraged to have an inspection.
3. Any items left blank by the buyer are to be deemed waived by the buyer.
4. Close of Escrow to be on or before July 13, 2012.
_____
_____

**OTHER TERMS:** All other terms to remain the same as original Residential Purchase Agreement plus terms
agreed to in Counter Offer(s) No. 1_____.
**EXPIRATION:** ☒ Buyer ☐ Seller must respond by: 5:00 ☐ AM ☒ PM on (month) ____March____,
(day) ____15____, (year) ____2012____. Unless this Counter Offer is accepted by execution below
and delivered to the ☐ Buyer's ☒ Seller's Broker before the above date and time, this Counter Offer shall
lapse and be of no further force and effect.

Date: 03/18/12

Time: 1:17 Pm

☐ Buyer ☒ Seller Abdel Assahouri                                    Signature

☐ Buyer ☒ Seller Mona Assahouri                                    Signature

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The undersigned ☒ Buyer ☐ Seller hereby:
____X____ accepts the Counter Offer;
_____ accepts the terms of this Counter Offer subject to the attached Counter Offer No. _____; or
_____ rejects the Counter Offer.

Date: 3/14/12

Time: 9:51 Am

☒ Buyer ☐ Seller Christopher Burns                                 Signature

☐ Buyer ☐ Seller                                                              Signature

Counter Offer Rev. 5/06                                    © 2006 Greater Las Vegas Association of REALTORS®

Keller Williams Realty Las Veg 3090 S Durango Dr Ste 100 Las Vegas, NV 89117
Phone: (702)212-2222        Fax: (702)212-2223        Dale Snyder                                    9816 Almenia

Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 46026   www.zipLogix.com



## RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions and Earnest Money Receipt)

Date: 2/28/12

CHRISTOPHER BURNS _____ ("Buyer"), hereby offers to purchase
9616 ALMENIA ST. _____ ("Property"),
within the city or unincorporated area of LAS VEGAS _____, County of CLARK _____
State of Nevada, Zip 89178 ____ A.P.N. # 176-26-115-069 ___ for the purchase price of $ 240,000.
TWO HUNDRED FORTY THOUSAND _____ dollars ("Purchase Price") on the terms
and conditions contained herein:
BUYER ☒ does -OR- ☐ does not intend to occupy the Property as a residence.

### Buyer's Offer

**1.   FINANCIAL TERMS & CONDITIONS:**

$ 2000.00        **A. EARNEST MONEY DEPOSIT ("BMD")** is ☒ presented with this offer -OR- ☐ _____

*(NOTE: It is a felony in the State of Nevada, punishable by up to four years in prison and a $5,000 fine to write a check for which there are insufficient funds. NRS 193.130(2)(d).)*

$ 0        **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____, the
additional deposit ☐ will -OR- ☐ will not be considered part of the BMD. (Any conditions on the additional
deposit should be set forth in Section 28 herein.)

$ 231,600.00        **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A NEW LOAN ON
THE FOLLOWING TERMS AND CONDITIONS:**
☐ Conventional, ☒ FHA, ☐ VA, ☐ Other (specify) _____
Interest: ☒ Fixed rate, 30 years -OR- ☐ Adjustable Rate, _____ years, initial rate of interest not to
exceed 4.5 %, initial monthly payment not to exceed $ 1,774.0 , not including taxes, insurance
and/or PMI or MIP.

$ 0        **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO ASSUME THE
FOLLOWING EXISTING LOAN(S):**
☐ Conventional, ☐ FHA, ☐ VA, ☐ Other (specify) _____
Interest: ☐ Fixed rate, _____ years -OR- ☐ Adjustable Rate, _____ years, initial rate of interest not to
exceed _____ %. Monthly payment not to exceed $ _____, not including taxes, insurance and/or PMI or MIP.

$ 0        **E. BUYER TO EXECUTE A PROMISSORY NOTE SECURED BY DEED OR TRUST PER TERMS
IN "FINANCING ADDENDUM."**

$ 6400.00        **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in Good Funds to be paid prior to
Close of Escrow ("COE").

$ 240,000.00        **G. TOTAL PURCHASE PRICE.** (This price DOES NOT include closing costs, prorations, or other fees
and costs associated with the purchase of the Property as defined herein.)

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: CHRISTOPHER BURNS _____     BUYER(S) INITIALS: _____

Property Address: 9616 ALMENIA ST. _____     SELLER(S) INITIALS: _____     M____

**2. ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**

**A. NEW LOAN APPLICATION:** Within **3** _____ business days of Acceptance, Buyer agrees to (1) submit a completed loan application to a lender of Buyer's choice; (2) authorize ordering of the appraisal (per lender's requirements); and (3) furnish a preapproval letter to Seller based upon a standard factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the escrow and return EMD to Buyer. Buyer
☒ does **-OR-** ☐ does not
authorize lender to provide loan status updates to Seller and Buyer's Brokers, as well as Escrow Officer. Buyer agrees to use Buyer's best efforts to obtain financing under the terms and conditions outlined in this Agreement.

**B. CASH PURCHASE:** Within **0** _____ business days of Acceptance, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the written evidence within the above period, Seller reserves the right to terminate this Agreement.

**C. APPRAISAL:** If an appraisal is required as part of this agreement, or requested by Buyer, and if the appraisal is less than the Purchase Price, the transaction will go forward if (1) Buyer, at Buyer's option, elects to pay the difference and purchase the Property for the Purchase Price, or (2) Seller, at Seller's option, elects to adjust the Purchase Price accordingly, such that the Purchase Price is equal to the appraisal. If neither option (1) or (2) is elected, then Parties may renegotiate; if renegotiation is unsuccessful, then either Party may cancel this Agreement upon written notice, in which event the EMD shall be returned to Buyer.

**3. SALE OF OTHER PROPERTY:**
This Agreement
☒ is not **-OR-**
☐ is contingent upon the sale (and closing) of another property which address is
_____

Said Property
☐ is currently listed
☐ is not **-OR-** ☐ is
presently in escrow with _____
Escrow Number: _____, Proposed Closing Date: _____

When Buyer has accepted an offer on the sale of this other property, Buyer will promptly deliver a written notice of the sale to Seller. If Buyer's escrow on this other property is terminated, abandoned, or does not close on time, this Agreement will terminate without further notice unless the parties agree otherwise in writing. If Seller accepts a bona fide written offer from a third party prior to Buyer's delivery of notice of acceptance of an offer on the sale of Buyer's property, Seller shall give Buyer written notice of that fact. Within three (3) days of receipt of the notice, Buyer will waive the contingency of the sale and closing of Buyer's other property, or this Agreement will terminate without further notice. In order to be effective, the waiver of contingency must be accompanied by reasonable evidence that funds needed to close escrow will be available and Buyer's ability to obtain financing is not contingent upon the sale and/or close of any other property.

**4. FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of the Property with no real value stated otherwise herein. Unless an item is covered under Section 7(E) of this Agreement, all items are transferred in an "AS IS" condition.

**A.** All EXISTING fixtures and fittings including, but not limited to: electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power system(s), built-in appliance(s), window and door screens, awnings, shutters, window coverings, attached floor covering(s), television antenna(s), satellite dish(s), private integrated telephone systems, air coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping, trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);

**B.** The following additional items of personal property: AS PER MLS #1230846

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **CHRISTOPHER BURNS**          BUYER(S) INITIALS: CB / ____

Property Address: **9816 ALMENIA ST**          SELLER(S) INITIALS ____ / ____

Rev. 12/11          ©2011 Greater Las Vegas Association of REALTORS®          Page 2 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Unttled

5.  **ESCROW:**

**A.  OPENING OF ESCROW:** The purchase of the Property shall be consummated through Escrow ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after execution of this Agreement ("Opening of Escrow"), at _____ COOPER CASTLE _____ title or escrow company ("Escrow Company") or "ESCROW HOLDER" with _____ DENISE WAUGH _____ ("Escrow Officer") (or such other escrow officer as Escrow Company may assign). Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted Agreement and receipt of the EMD (if applicable). ESCROW HOLDER is instructed to notify the Parties (through their respective Brokers) of the opening date and the Escrow Number.

**B.  EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of this Agreement, shall be deposited per the Earnest Money Receipt Notice and Instructions contained herein.

**C.  CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on (date) **30 DAYS UPON BANK ACCEPTAN**. If the designated date falls on a weekend or holiday, COE shall be the next business day.

**D.  IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation which became effective January 1, 1987, that requires all ESCROW HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction and the ESCROW HOLDER. Seller is also made aware that ESCROW HOLDER is required by federal law to provide this information to the Internal Revenue Service after COE in the manner prescribed by federal law.

**E.  FIRPTA:** If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to ESCROW HOLDER a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign Investment In Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual, a foreign corporation not treated as a domestic corporation; or a foreign partnership, trust or estate. A resident alien is not considered a foreign person under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by ESCROW HOLDER in accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the ESCROW HOLDER the necessary documents, to be provided by the ESCROW HOLDER, to determine if withholding is required. (See 26 USC Section 1445).

6.  **TITLE INSURANCE:** Upon COE, Buyer will be provided with the following type of title insurance policy: ☐ CLTA; ☑ ALTA-Residential) -OR- ☐ ALTA-Extended (including a survey, if required).

7.  **PRORATIONS, FEES AND EXPENSES** (Check appropriate box):

**A.  TITLE AND ESCROW FEES:**

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | N/A |
|---|---|---|---|---|
| Escrow Fees | ☐ | ☐ | ☑ | ☐ |
| Lender's Title Policy | ☐ | ☑ | ☐ | ☐ |
| Owner's Title Policy | ☑ | ☐ | ☐ | ☐ |
| Real Property Transfer Tax | ☑ | ☐ | ☐ | ☐ |
| Other: | ☐ | ☐ | ☐ | ☑ |

**B.  PRORATIONS:**

| TYPE | PAID BY SELLER | PRORATE | N/A |
|---|---|---|---|
| CIC (Common Interest Community) Assessments | ☐ | ☐ | ☑ |
| CIC Periodic Fees | ☐ | ☑ | ☐ |
| SIDs / LIDs / Bonds / Assessments | ☐ | ☐ | ☑ |
| Sewer Use Fees | ☐ | ☑ | ☐ |
| Trash Service Fees | ☐ | ☑ | ☐ |
| Real Property Taxes | ☐ | ☐ | ☑ |
| Other: | ☐ | ☐ | ☐ |

All prorations will be based on a 30-day month and will be calculated as of COE. Prorations will be based upon figures available at closing. Any supplementals or adjustments that occur after COE will be handled by the parties outside of Escrow.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **CHRISTOPHER BURNS**            BUYER(S) INITIALS: _____ / _____

Property Address: **9818 ALMENIA ST.**            SELLER(S) INITIALS: _____ / _____

C.   INSPECTIONS AND RELATED EXPENSES (See also Section 12): Acceptance of this offer is subject to the following reserved right. Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property. Seller will ensure that necessary utilities (gas, power and water) are turned on and supplied to the Property within two (2) business days after execution of this Agreement, to remain on until COB. (It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections.)

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED | N/A |
|---|---|---|---|---|---|
| Appraisal | | ☒ | | | |
| CIC Capital Contribution | | | | | ☒ |
| CIC Transfer Fees | | | | | ☒ |
| CLUB Report ordered by Seller | | | | | ☒ |
| Energy Audit | | | | | ☒ |
| Fungal Contaminant Inspection | | ☒ | | | |
| Home Inspection | | ☒ | | | |
| Mechanical Inspection | | | | | ☒ |
| Oil Tank Inspection | | | | | ☒ |
| Pool/Spa Inspection | | ☒ | | | |
| Roof Inspection | | | | | ☒ |
| Septic Inspection (requires pumping) | | | | | ☒ |
| Septic Lid Removal | | | | | ☒ |
| Septic Pumping | | | | | ☒ |
| Soils Inspection | | | | | ☒ |
| Structural Inspection | | | | | ☒ |
| Survey _____ (type) | | | | | ☒ |
| Termite/Pest Inspection | | | | | ☒ |
| Well Inspection (Quantity) | | | | | ☒ |
| Well Inspection (Quality) | | | | | ☒ |
| Wood-Burning Device/Chimney Inspection (includes cleaning) | | ☒ | | | |
| Other: | | | | | ☒ |
| Re-Inspections | | | | | |

If any inspection is not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid outside of Escrow unless the Parties present Instructions to the contrary prior to COB (along with the applicable invoice).

D.   CERTIFICATIONS: Notwithstanding the elections below, in the event an inspection reveals problems with any of the foregoing, Buyer reserves the right to require a certification.

| TYPE | PAID BY SELLER | PAID BY BUYER | 50/50 | WAIVED |
|---|---|---|---|---|
| Fungal Contaminant | | ☒ | | |
| Roof | | | | ☒ |
| Septic | | | | ☒ |
| Well | | | | ☒ |
| Wood-Burning Device/Chimney Certification | ☒ | | | |
| Other: | | | | ☒ |

The foregoing expenses for certifications will be paid outside of Escrow unless the Parties present Instructions to the contrary prior to COB (along with the applicable invoice). A certification is not a warranty.

E.   SELLER'S ADDITIONAL COSTS AND LIMIT OF LIABILITY: Seller agrees to pay a maximum amount of $ 0 _____ to correct defects and/or requirements disclosed by inspection reports, appraisals, and/or certifications. It is Buyer's responsibility to inspect the Property sufficiently so as to satisfy Buyer's use. Buyer reserves the right to request additional repairs, which may exceed the above-stated amount, based upon the Seller's Real Property

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: __CHRISTOPHER BURNS__          BUYER(S) INITIALS: _____

Property Address: __9816 ALMENIA ST.__          SELLER(S) INITIALS: _____

Rev. 12/11          ©2011 Greater Las Vegas Association of REALTORS®          Page 4 of 11

Disclosure of items which materially affect value or use of the Property revealed by an inspection, certification or appraisal. Items of a general maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at the time of Acceptance and which are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this section. The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one party.

**F.    LENDER AND CLOSING FEES:** In addition to Seller's expenses above, Seller will contribute $ **7200** _____ to Buyer's Lender's Fees and/or Buyer's Title and Escrow Fees ☒ including -OR- ☐ excluding costs which Seller must pay pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have different appraisal and financing requirements, which will affect the parties' rights and costs under this Agreement.

**G.    HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home Protection Plans that provide coverage to Buyer after COE. Buyer ☒ waives -OR- ☐ requires a Home Protection Plan with _____ N/A _____ , ☐ Seller -OR- ☐ Buyer will pay for the Home Protection Plan at a price not to exceed $ **0** _____ . Buyer will order the Home Protection Plan. Neither Seller nor Brokers make any representation as to the extent of coverage or deductibles of such plans. ESCROW HOLDER is not responsible for ordering the Home Protection Plan.

**8.    TRANSFER OF TITLE:** Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes, (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COE. Buyer is advised the Property may be reassessed after COE which may result in a real property tax increase or decrease.

**9.    COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"), Seller or his authorized agent shall request the CIC documents and certificates listed in NRS 116.4109 (collectively, the "resale package") within two (2) business days of Acceptance and provide the same to Buyer within one (1) business day of Seller's receipt thereof. Buyer may cancel this Agreement without penalty until midnight of the fifth (5th) calendar day following the date of receipt of the resale package. If Buyer does not receive the resale package within fifteen (15) calendar days of Acceptance, this Agreement may be cancelled in full by Buyer without penalty. If Buyer elects to cancel this Agreement pursuant to this section, he must deliver, via hand delivery or prepaid U.S. mail, a written notice of cancellation to Seller or his authorized agent identified in the Confirmation of Representation at the end of this Agreement. Upon such written cancellation, Buyer shall promptly receive a refund of the EMD. The parties agree to execute any documents requested by ESCROW HOLDER to facilitate the refund. If written cancellation is not received within the specified time period, the resale package will be deemed approved. Seller shall pay all outstanding CIC fines or penalties at COE.

**10.    DISCLOSURES:** Within five (5) calendar days of Acceptance of this Agreement, Seller will provide the following Disclosures and/or documents (each of which is incorporated herein by this reference). Check applicable boxes.

☐ Construction Defect Claims Disclosure, if Seller has marked "Yes" to Paragraph 1(d) of the Seller Real Property Disclosure Form (NRS 40.688)

☐ Fungal (Mold) Notice Form (not required by Nevada law)

☐ Lead-Based Paint Disclosure and Acknowledgment, required if constructed before 1978 (24 CFR 745.113)

☐ Pest Notice Form (not required by Nevada law)

☐ Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer

☐ Open Range Disclosure (NRS 113.065)

☒ Seller Real Property Disclosure Form (NRS 113.130)

☒ Other (list) **SHORT SALE ADDENDUM** _____

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **CHRISTOPHER BURNS** _____    BUYER(S) INITIALS: _____ / _____

Property Address: **9816 ALMENIA ST.** _____    SELLER(S) INITIALS _____ / _____

Rev. 12/11                ©2011 Greater Las Vegas Association of REALTORS®                Page 5 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Untitled

**11.  ADDITIONAL DISCLOSURES:**

A.  LICENSEE DISCLOSURE OF INTEREST (BUYER): Pursuant to NRS 645.252(1)(s), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. N/A _____ is a licensed real estate agent in the State(s) of _____ N/A _____, and has the following interest, direct or indirect, in this transaction: ☐ Principal (Buyer) -OR- ☐ family or firm relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship) _____ N/A _____

B.  In addition, for NEW CONSTRUCTION, to the extent applicable, Seller will provide: Public Offering Statement (NRS 116.4108); Electric Transmission Lines (NRS 119.1835); Public Services and Utilities (NRS 119.183); Initial Purchaser Disclosure (NRS 113); Construction Recovery Fund (NRS 624); Gaming Corridors (NRS 113.070); Water/Sewage (NRS 113.060); Impact Fees (NRS 278B.320); Surrounding Zoning Disclosure (NRS 113.070); FTC Insulation Disclosure (16 CFR 460.16); and Other: N/A

C.  AIRPORT NOISE: Buyer hereby acknowledges the proximity of various overflight patterns, airports (municipal, international, military and/or private) and helipads. Buyer also fully understands that existing and future noise levels at this location, associated with existing and future airport operations, may affect the livability, value and suitability of the Property for residential use. Buyer also understands that these airports have been at their present location for many years, and that future demand and airport operations may increase significantly. For further information, contact your local department of aviation or the Federal Aviation Administration.

D.  FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES: All properties are offered without regard to race, color, religion, sex, national origin, ancestry, handicap or familial status and any other current requirement of federal or state fair housing law.

**12.  BUYER'S DUE DILIGENCE:**

A.  DUE DILIGENCE PERIOD: Buyer shall have 10 _____ calendar days from Acceptance to complete Buyer's Due Diligence. Buyer shall ensure that all inspections and certifications are initiated in a timely manner as to complete the Due Diligence in the time outlined herein. (If utilities are not supplied by the deadline referenced herein or if the disclosures are not delivered to Buyer by the deadline referenced herein, then Buyer's Due Diligence Period will be extended by the same number of calendar days that Seller delayed supplying the utilities or delivering the disclosures, whichever is longer.) During this period Buyer shall have the exclusive right at Buyer's discretion to cancel this Agreement. In the event of such cancellation, unless otherwise agreed herein, the EMD will be refunded to Buyer. If Buyer provides Seller with notice of objections, the Due Diligence Period will be extended by the same number of calendar days that it takes Seller to respond in writing to Buyer's objections. If Buyer fails to cancel this Agreement within the Due Diligence Period (as it may be extended), Buyer will be deemed to have waived the right to cancel under this section.

B.  PROPERTY INSPECTION/CONDITION: During the Due Diligence Period, Buyer shall take such action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to, whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, etc.) or any other concerns Buyer may have related to the Property. During such Period, Buyer shall have the right to have non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning, water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors. Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property. Buyer is advised to consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to schools; proximity and adequacy of law enforcement; proximity to commercial, industrial or agricultural activities; crime statistics; fire protection; other governmental services; existing and proposed transportation, construction and development; noise or odor from any source; and other nuisances, hazards or circumstances. If Buyer cancels this Agreement due to a specific inspection report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and telephone number of the inspector.

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  CHRISTOPHER BURNS                    BUYER(S) INITIALS: _____

Property Address:  9816 ALMENIA ST                    SELLER(S) INITIALS: _____

Rev. 12/11            ©2011 Greater Las Vegas Association of REALTORS®            Page 6 of 11

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com            Untitled

1    C.    PRELIMINARY TITLE REPORT: Within ten (10) business days of Opening of Escrow, Title Company
2 shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5)
3 business days of receipt thereof. If Buyer does not object to the PTR within the period specified above, the PTR shall be
4 deemed accepted. If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business
5 days after receipt of objections to correct or address the objections. If, within the time specified, Seller fails to have each such
6 exception removed or to correct each such other matter as aforesaid, Buyer shall have the option to: (a) terminate this
7 Agreement by providing notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title
8 to the Property as is. All title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted
9 Exceptions."
10
11    13.    WALK-THROUGH INSPECTION OF PROPERTY: Buyer is entitled under this Agreement to a walk-through of
12 the Property within  2  calendar days prior to COE to ensure the Property and all major systems, appliances,
13 heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure
14 Statement, and that the Property and improvements are in the same general condition as when this Agreement was signed by
15 Seller and Buyer. To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on. If any
16 systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right
17 to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or
18 power/gas/water. The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have
19 been completed as agreed, and (c) Seller has complied with Seller's other obligations. If Buyer elects not to conduct a walk-
20 through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer
21 releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection,
22 except as otherwise provided by law.
23
24    14.    DELIVERY OF POSSESSION: Seller shall deliver the Property along with any keys, alarm codes, garage door
25 opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COE. Seller agrees
26 to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than
27 ☒ COE -OR- ☐ _____ . In the event Seller does not vacate the Property by this time, Seller shall be
28 considered a trespasser and shall be liable to Buyer for the sum of $ 0 _____ per calendar day in addition to
29 Buyer's legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be
30 considered abandoned by Seller.
31
32    15.    RISK OF LOSS: Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any
33 material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and
34 Buyer is entitled to recover any portion of the sale price paid. If legal title or possession has transferred, risk of loss shall shift
35 to Buyer.
36
37    16.    ASSIGNMENT OF THIS AGREEMENT: Unless otherwise stated herein, this Agreement is non-assignable by
38 Buyer.
39
40    17.    CANCELLATION OF AGREEMENT: In the event this Agreement is properly cancelled in accordance with the
41 terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any
42 expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction
43 (unless otherwise provided herein).
44
45    18.    DEFAULT:
46
47    A.    MEDIATION: Before any legal action is taken to enforce any term or condition under this Agreement, the
48 parties agree to engage in mediation, a dispute resolution process, through GLVAR. Notwithstanding the foregoing,
49 in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply.
50
51    B.    IF SELLER DEFAULTS: If Seller defaults in performance under this Agreement, Buyer reserves all legal
52 and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual
53 damages incurred by Buyer due to Seller's default.
54
55
56

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  CHRISTOPHER BURNS          BUYER(S) INITIALS: CB /

Property Address:  9816 ALMENIA ST.          SELLER(S) INITIALS: ___ / ___

Rev. 12/11          ©2011 Greater Las Vegas Association of REALTORS®          Page 7 of 11
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Untitled

C.   IF BUYER DEFAULTS:  If Buyer defaults in performance under this Agreement, Seller shall have one of the following legal recourses against Buyer (initial one only):

[_____] As Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default. Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

-OR-

[_____] Seller shall have the right to recover from Buyer all of Seller's actual damages that Seller may suffer as a result of Buyer's default including, but not limited to, commissions due, expenses incurred until the Property is sold to a third party and the difference in the sales price.

## Instructions to Escrow

19.   ESCROW:  If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER's negligence or willful misconduct. If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves. Upon the entry of an order authorizing such interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER's duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and their disposition in accordance with the terms of this Agreement. In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

20.   UNCLAIMED FUNDS:  In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account. Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

21.   BROKER FEES:  Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer via the Multiple Listing Service, any other advertisement or written offer. Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due. In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will -OR- ☒ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.

22.   WAIVER OF CLAIMS:  Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein. Buyer agrees to satisfy himself, as to the condition of the Property, prior to COE. Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:   CHRISTOPHER BURNS                           BUYER(S) INITIALS: _____

Property Address:   0918 ALMENIA ST.                          SELLER(S) INITIALS: _____

Rev. 12/11                      ©2011 Greater Las Vegas Association of REALTORS®                Page 8 of 11
                                                                                               Unlisted

1  Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to
2  make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage. Buyer waives all claims
3  against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c)
4  environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's
5  proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to
6  Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to
7  conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is
8  limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.
9

## Other Matters

11  23.  DEFINITIONS: "Acceptance" means the date that both parties have consented to and received a final, binding
12  contract by affixing their signatures to this Agreement and all counteroffers. "Agent" means a licensee working under a Broker
13  or licensees working under a developer. "Agreement" includes this document as well as all accepted counteroffers and
14  addenda. "Bona Fide" means genuine. "Buyer" means one or more individuals or the entity that intends to purchase the
15  Property. "Broker" means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real
16  estate agents associated therewith). "Business Day" excludes Saturdays, Sundays, and legal holidays. "Calendar Day" means
17  a calendar day from/to midnight unless otherwise specified. "CFR" means the Code of Federal Regulations. "CIC" means
18  Common Interest Community (formerly known as "HOA" or homeowners associations). "CIC Capital Contribution" means
19  a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. "CIC Transfer Fees"
20  means the administrative service fee charged by a CIC to transfer ownership records. "CLUE" means Comprehensive Loss
21  Underwriting Exchange. "Close of Escrow (COE)" means the time of recordation of the deed in Buyer's name. "Default"
22  means the failure of a Party to observe or perform any of its material obligations under this Agreement. "Delivered" means
23  personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or
24  mailed by regular mail. "Down Payment" is the Purchase Price less loan amount(s). "EMD" means Buyer's earnest money
25  deposit. "Escrow Holder" means the neutral party that will handle the escrow. "FHA" is the U.S. Federal Housing
26  Administration. "GLVAR" means the Greater Las Vegas Association of REALTORS®. "Good Funds" means an acceptable
27  form of payment determined by ESCROW HOLDER in accordance with NRS 645A.171. "IRC" means the Internal Revenue
28  Code (tax code). "LID" means Limited Improvement District. "N/A" means not applicable. "NAC" means Nevada
29  Administrative Code. "NRS" means Nevada Revised Statutes, as Amended. "Party" or "Parties" means Buyer and Seller.
30  "PITI" means principal, interest, taxes, and hazard insurance. "PMI" means private mortgage insurance. "PST" means
31  Pacific Standard Time, and includes daylight savings time if in effect on the date specified. "PTR" means Preliminary Title
32  Report. "Property" means the real property and any personal property included in the sale as provided herein. "Receipt"
33  means delivery to the party or the party's agent. "Seller" means one or more individuals or the entity that is the owner of the
34  Property. "SID" means Special Improvement District. "Title Company" means the company that will provide title insurance.
35  "USC" is the United States Code. "VA" is the Veterans Administration.
36
37  24.  SIGNATURES, DELIVERY, AND NOTICES:
38     A.   This Agreement may be signed by the parties on more than one copy, which, when taken together, each
39  signed copy shall be read as one complete form. This Agreement (and documents related to any resulting transaction) may be
40  signed by the parties manually or digitally. Facsimile signatures may be accepted as original.
41
42     B.   Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for
43  Seller or Buyer if represented.
44
45     C.   Except as otherwise provided in Section 9, when a Party wishes to provide notice as required in this
46  Agreement, such notice shall be sent regular mail, personal delivery, by facsimile, overnight delivery and/or by email to the
47  Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read
48  receipt confirmed in the case of email. Any cancellation notice shall be contemporaneously faxed to Escrow.
49
50  25.  IRC 1031 EXCHANGE: Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party
51  electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost
52  to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.
53
54  Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
    particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  CHRISTOPHER BURNS          BUYER(S) INITIALS: _____

Property Address:  9816 ALMENIA ST.        SELLER(S) INITIALS: _____

Rev. 12/11        ©2011 Greater Las Vegas Association of REALTORS®     Page 9 of 11
                  Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     Untitled

26.    OTHER ESSENTIAL TERMS: Time is of the essence. No change, modification or amendment of this Agreement shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party. This Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect. The parties agree that the county and state in which the Property is located is the appropriate forum for any action relating to this Agreement. Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorneys fees and costs incurred by such prevailing party.

THIS IS A LEGALLY BINDING CONTRACT. All parties are advised to seek independent legal and tax advice to review the terms of this Agreement.

NO REAL ESTATE BROKER/AGENT MAY SIGN FOR A PARTY TO THIS AGREEMENT UNLESS THE BROKER OR AGENT HAS A PROPERLY EXECUTED POWER OF ATTORNEY TO DO SO.

THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

27.    ADDENDUM(S) ATTACHED: _____

_____

_____

28.    ADDITIONAL TERMS: IN THE EVENT THAT THE SHORT SALE IS NOT APPROVED BY THE BA
BUYER'S EARNEST MONEY TO BE REFUNDED IN FULL.

_____

_____

_____

_____

_____

_____

_____

### Earnest Money Receipt

BUYER'S AGENT ACKNOWLEDGES RECEIPT FROM BUYER HEREIN of the sum of $ 2000
evidenced by ☐ Cash,  ☐ Cashier's Check, ☑ Personal Check, or ☐ Other _____
payable to  TITLE COMPANY _____ , Upon Acceptance, Earnest Money to be deposited within ONE (1) business
day, with ☑ Escrow Holder, ☐ Buyer's Broker's Trust Account, – OR – ☐ Seller's Broker's Trust Account.

Date: 3/7/12   Signed: _____   Buyer's Agent: ERESTO AHUMADA

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:   CHRISTOPHER BURNS                    BUYER(S) INITIALS: _____

Property Address:  9816 ALMENIA ST.                    SELLER(S) INITIALS: _____
Rev. 12/11                    ©2011 Greater Las Vegas Association of REALTORS®                    Page 10 of 11
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Unsold

## Buyer's Acknowledgement of Offer

1  Upon Acceptance, Buyer agrees to be bound by each provision of this Agreement, and all signed addenda, disclosures, and
2  attachments.
3
4                              CHRISTOPHER BURNS          2/1/2012    5:00  ☐ AM ☑ PM
5  _____          _____          _____    ____
6  Buyer's Signature           Buyer's Printed Name        Date       Time
7
8                                                                     _____ ☐ AM ☐ PM
9  Buyer's Signature           Buyer's Printed Name        Date       Time
10
11  Seller must respond by: __5__ ☐ AM ☑ PM on (month) __07__, (day) __10__, (year) __12__. Unless this
12  Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and
13  time, this offer shall lapse and be of no further force and effect.
14
15  Confirmation of Representation: The Buyer is represented in this transaction by:
16
17  Buyer's Broker: CHERYL SMITH              Agent's Name: ERNESTO AHUMADA
18  Company Name: REALTY ONE GROUP            Agent's Public ID: 214707
19  Phone: 702-326-4185                       Office Address: 10750 W. CHARLESTON BLVD.
20  Email: ERNESTO@LVTEAMREALTY.COM           City, State, Zip: LAS VEGAS, NV 89135
21  Fax: 866-632-2044
22

## Seller's Response

23
24  ☐ ACCEPTANCE: Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement,
25  and all signed addenda, disclosures, and attachments.
26  ☑ COUNTER OFFER: Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.
27  ☐ REJECTION: In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein is not accepted.
28
29  FIRPTA DECLARATION: Pursuant to Section 5.E. herein, Seller declares that he/she
30  ☐ is not -OR-
31  ☐ is a foreign person therefore subjecting this transaction to FIRPTA withholding.
32
33
34  _____          Abdel Assghour     3/13/12    1:15  ☐ AM ☐ PM
35  Seller's Signature          Seller's Printed Name   Date      Time
36
37
38  _____          Nana Assahaur     3/13/12    1:15  ☐ AM ☐ PM
39  Seller's Signature          Seller's Printed Name   Date      Time
40
41  Confirmation of Representation: The Seller is represented in this transaction by:
42
43  Seller's Broker: CANDACE DOYLE            Agent's Name: DALE SNYDER
44  Company Name: KELLER WILLIAMS REALTY      Office Address: 8090 S. DURANGO DR
45  Phone: 702-320-8205                       City, State, Zip: LAS VEGAS, NV
46  Email: TRANSACTIONCOORDINATOR@DALESNYDER.CC  Fax: 702-476-1733
47
48  LICENSEE DISCLOSURE OF INTEREST (SELLER): Pursuant to NRS 645.252(1)(c), a real estate licensee must
49  disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. N/A
50  N/A _____ is a licensed real estate agent in the State(s) of N/A _____, and has the following interest,
51  direct or indirect, in this transaction: ☐ Principal (Seller) -OR- ☐ family or firm relationship with Seller or ownership interest
52  in Seller (if Seller is an entity): (specify relationship) N/A
   Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a
   particular paragraph is otherwise modified by addendum or counteroffer.

   Buyer's Name: CHRISTOPHER BURNS           BUYER(S) INITIALS: VB /

   Property Address: 9816 ALMENIA ST.        SELLER(S) INITIALS: __ / __
   Rev. 12/11                 ©2011 Greater Las Vegas Association of REALTORS®    Page 11 of 11
                      Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Untitled



VANDYK MORTGAGE
CORPORATION

*A NATIONAL MORTGAGE BANKING COMPANY SINCE 1987*

## Conditional LOAN APPROVAL

**03/13/2012**

**Loan Number: 201002845126**
Approval good for 45 days

**Buyer(s):**
    Christopher Burns
**Subject property:**
**TBD**

**Conditional Loan Approval:**
30 Year Fixed FHA 3.5 % Down
Purchase Price up to:    $ 240,000
Loan Amount :        $ 231,600

## Prior to Doc conditions:
- Title dated within 45 days of closing with sufficient coverage matching ISAOA
- HVCC compliant 1004 with pictures
- H/O Ins-Loss payee with correct ISAOA, good for 60 days from funding
- Approved closing agent
- Fully executed Purchase contract signed by seller and buyer
- Proper Income Documentation supporting income on 1003
- **Cleared**- Proof of source funds to close
- **Cleared**- Credit Score Minimum requirement met

This is not a commitment to lend. All conditions listed above must be met for qualification.

*[signature]*

Erik C Würtner
Branch Manager
VanDyk Mortgage Corp

153 W Lake Mead Pkwy Ste 2250  Henderson NV 89015
Ph: (702) 982-8870  I  Fax: (702)446-8237  I  Lic #2660

 REALTY **ONE** GROUP

**SHORT SALE ADDENDUM**
**TO PURCHASE AGREEMENT**
(and Joint Escrow Instructions)



1  In reference to the Purchase Agreement executed by ___CHRISTOPHER BURNS___ as Buyer(s) and

2  ___ABDEL & MONA ASSAHOURI___ as Seller(s), dated ___2/29/12___ covering the real property at

3  ___9915 ALMENIA ST. LAS VEGAS, NV 89120___ , the ☒ Buyer ☐ Seller hereby proposes that the

4  Purchase Agreement be amended as follows:

5

6  **1.  Contingent on Existing Lender Approval.** Buyer and Seller acknowledge that the Purchase
7  Price is less than the amount of Seller's existing loan(s) against the Property due and owing to one or
8  more lender(s) and/or lienholder(s) (collectively, "Lender"). Such a transaction is called a "short sale."
9  Therefore, the Purchase Agreement is contingent upon Seller and/or Seller's Agent obtaining approval
10  from Lender ("Lender Approval") to accept an amount less than what is owed on the Property to release
11  Lender's lien on the Property (subject to parties' approval; see Section 3 below). **SELLER**
12  **UNDERSTANDS AND ACKNOWLEDGES THAT LENDER APPROVAL MAY BE**
13  **CONDITIONED UPON ANY OR ALL OF THE FOLLOWING: (A) MAKING A CASH**
14  **PAYMENT; (B) SIGNING A NEW PROMISSORY NOTE; (C) CONTINUING TO OWE THE**
15  **LENDER THE UNPAID PORTION OF THE LOAN(S); AND (D) OTHER REQUIREMENTS**
16  **MADE BY LENDER.** Seller shall reasonably cooperate with Lender in the short sale process by
17  providing such documentation as may be required by Lender. **BUYER AND SELLER**
18  **UNDERSTAND THAT LENDER APPROVAL MAY TAKE SEVERAL MONTHS TO OBTAIN,**
19  **AND NEITHER THE SELLER, THE ESCROW HOLDER NOR THE BROKERS CAN**
20  **GUARANTEE THE TIMELINESS OF LENDER'S REVIEW, APPROVAL OR REJECTION.**
21  Buyer Initials [ _____ ] [ _____ ]      Seller Initials [ _____ ] [ _____ ]
22

23  **2.  Notice of Lender Approval.** Seller agrees to provide Buyer with written notice of Lender
24  Approval within two (2) business days of Seller's receipt of the approval. Seller may use the "Lender
25  Short Sale Approval Addendum" to facilitate this notice. (For clarification, this is not intended to
26  encompass or delay transmission of any subsequent Lender Approval which may be issued to grant an
27  extension at the end of the transaction pursuant to Section 5 herein.)
28

29  **3.  No Guarantee of Lender Approval.** Buyer and Seller understand that no Lender is required or
30  obligated to accept a short sale, and that Lender Approval may be revoked at any time prior to COE. In
31  addition, the Parties understand that Lender may require that in exchange for approval some terms of the
32  Purchase Agreement be amended. Neither Buyer nor Seller is obligated to agree to any of Lender's
33  proposed terms; either Party may, in its sole discretion, reject the amended terms required by Lender. In
34  such event, the Purchase Agreement shall be void and the Parties agree to execute cancellation
35  instructions with ESCROW HOLDER and return EMD to Buyer. **NEITHER THE BUYER, THE**
36  **SELLER, THE ESCROW HOLDER NOR THE BROKERS IN THIS TRANSACTION HAVE**
37  **ANY CONTROL OVER LENDER APPROVAL, OR ANY ACT, OMISSION OR DECISION BY**
38  **ANY LENDER IN THE SHORT SALE PROCESS.**
39

40  **4.  Time Periods.** Opening escrow and depositing earnest money shall occur as stated in the
41  Purchase Agreement. The time periods specified in the Purchase Agreement for due diligence,
42  disclosures, inspections and other contingencies shall begin (check one):
43  ☒ as stated in the Purchase Agreement;
44  ☐ one (1) calendar day after the Parties' mutual written approval of the Lender Approval; —OR—
45  ☐ Other _____

Buyer Initials: [ _____ ] [ _____ ]      Page 1 of 3      Seller Initials: _____ [ _____ ]

Short Sale Addendum to Purchase Agreement Rev. 3/10      © 2010 Greater Las Vegas Association of REALTORS®
Realty ONE Group, 1st 10th S Buena Ra St, 303 Henderson, NV 89074      Phone: (702)560-7355      Fax: (702)361-4046      Unit 3
Theresa Fagin      Produced with ZipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

5.     **Close of Escrow.** Buyer and Seller understand that Lender Approval will include an expiration date by which Close of Escrow ("COE") must occur. A typical Lender Approval is valid for 30 days. The Parties agree to use best efforts to meet the Lender's COE deadline and understand that any extension(s) must be by mutual written agreement and Lender's consent. Buyer understands that Lender may impose additional requirements, such as per diem funds to be paid by Buyer, as additional consideration for any extension(s).

6.     **Other Offers.** Buyer and Seller acknowledge that the Seller's Agent is required by the Multiple Listing Service to place the property in "Contingent" status after the Purchase Agreement is executed, while the transaction is subject to Lender Approval. The Parties understand that additional offers may be received by the Seller's Agent, which must be presented to the Seller pursuant to Nevada law. Seller may choose to accept such subsequent offers as back-up offers.

7.     **Buyer's Right to Cancel.** Buyer may cancel the Purchase Agreement for any reason and without penalty any time after ☐ 45 ☐ 60 ☒ 90 ☐ _____ days from Acceptance if Lender Approval has not been received. Upon Buyer's cancellation, Seller agrees to execute cancellation instructions with ESCROW HOLDER and return EMD to Buyer.

8.     **Foreclosure.** Seller warrants that, at the time of the Purchase Agreement, a Notice of Default and Election to Sell ☐ has not -OR- ☐ has (date: _____) been recorded against the Property. (Information regarding the foreclosure status of a property is available from the County Recorder where the Property is located.) The Parties understand that the recording of a Notice of Default begins a statutory foreclosure period, which lasts a minimum of three (3) months and twenty (20) days. At the end of the foreclosure period, the Property typically will be sold at a Trustee's Sale (foreclosure sale) and Seller will lose all rights and interest in the Property. Buyer and Seller understand that if COE does not occur before a foreclosure sale of the Property, the Purchase Agreement shall be void and escrow shall be cancelled. In such event, ESCROW HOLDER is instructed to return EMD to Buyer without any further instruction from the Parties. The Parties agree to forever release and relieve ESCROW HOLDER from any and all responsibility, liability, costs and/or litigation for the return of the EMD under these conditions.

9.     **Tax Consequences and Advice. A SHORT SALE MAY HAVE SERIOUS AND ADVERSE LEGAL, TAX, CREDIT AND ECONOMIC CONSEQUENCES FOR THE SELLER.** Seller agrees to seek advice from an attorney, a certified public accountant or other qualified professional regarding the legal effect and meaning of a short sale and any Lender Approval.
Seller Initials [ ⟋⟍ ] [ _____ ]

10.     **Unfulfilled Contingency.** If the Lender rejects the short sale, Seller will promptly notify Buyer of the rejection and the Purchase Agreement shall be void due to the unfulfilled contingency and escrow shall be cancelled. In such event, ESCROW HOLDER is instructed to return EMD to Buyer without any further instruction from the Parties. The Parties agree to forever release and relieve ESCROW HOLDER from any and all responsibility, liability, costs and/or litigation for the return of the EMD under these conditions.

11.     **Other Terms and Conditions:** _____

_____

_____

X   Buyer Initials: [ ⟋ ] [ _____ ]          Page 2 of 3          Seller Initials: [ ⟋⟍ ] [ ⟋⟍ ]
Short Sale Addendum to Purchase Agreement Rev. 6/10          © 2010 Greater Las Vegas Association of REALTORS®

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Untitled

1 _____
2 _____
3 _____
4 _____
5 _____
6 _____
7 _____
8 _____
9
10 All other terms of the Purchase Agreement, including all prior counteroffers and addenda not modified
11 by this Addendum shall remain the same. To the extent that any terms of this Addendum are in conflict
12 with the Purchase Agreement, this Addendum will control. **WHEN PROPERLY COMPLETED,**
13 **THIS IS A BINDING CONTRACT. IF YOU DO NOT FULLY UNDERSTAND ITS**
14 **CONTENTS, SEEK COMPETENT LEGAL AND TAX COUNSEL BEFORE SIGNING.**
15
16 (X)
17    [X] Buyer [ ] Seller                                      Date   9/28/12
18
19                                                            Time   6:00 pm
20    [ ] Buyer [ ] Seller
21
22 Acceptance:
23
24                                                            Date   5/15/12
25    [ ] Buyer [X] Seller
26
27                                                            Time   1:17 pm
28    [ ] Buyer [X] Seller
29
30 Prepared by: ERNESTO AHUMADA                              Phone  702-328-4126
31               Agent's Name

(X) Buyer Initials: [VB] [    ]                    Page 3 of 3                  Seller Initials: [    ] [    ]
Short Sale Addendum to Purchase Agreement Rev. 8/10                © 2010 Greater Las Vegas Association of REALTORS®

Produced with ZipForm® by ZipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

OMB Approval No. 2502-0265

A. **Settlement Statement (HUD-1)**

| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1. ☐ FHA  2. ☐ RHS  3. ☒ Conv. Unins. | | | 6. File Number: 13679NVNON | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
| 4. ☐ VA  5. ☐ Conv. Ins. | | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

( 13679NVNON 12)

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| Christopher Burns 9816 Almenia Street Las Vegas, NV 89178 | Abdel Assahouri and Mona Assahouri 9816 Almenia Street Las Vegas, NV 89178 | |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 9816 Almenia Street Las Vegas, NV 89178 Clark County, Nevada | The Cooper Castle Law Firm, LLP | |
| | Place of Settlement: 5275 South Durango Drive Las Vegas, NV 89113 | (702)435-4175 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | 240,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town taxes | | 406. City/Town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. Sewer | | 409. Sewer | |
| 110. Trash | | 410. Trash | |
| 111. HOA Assessment | | 411. HOA Assessment | |
| 112. | | 412. | |
| 113. | | 413. | |
| **120. Gross amount due from Borrower** | | **420. Gross amount due to Seller** | 240,000.00 |
| **200. Amounts Paid by or In Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 22,454.74 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 207,993.26 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Seller Credit towards Buyers Closing Cost | | 506. Seller Credit towards Buyers Closing Cost | 7,200.00 |
| 207. | | 507. Dep. disbursed as proceeds | |
| 208. Seller Credit for Owners Policy | | 508. Seller Credit for Owners Policy | 1,128.00 |
| 209. Seller Credit for Transfer Tax | | 509. Seller Credit for Transfer Tax | 1,224.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total paid by/for Borrower** | | **520. Total reduction amount due Seller** | 240,000.00 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement from/to Seller** | |
| 301. Gross amount due from Borrower (Line 120) | | 601. Gross amount due to Seller (Line 420) | 240,000.00 |
| 302. Less amount paid by/for Borrower (Line 220) | ( ) | 602. Less reductions due Seller (Line 520) | ( 240,000.00) |
| **303. CASH FROM BORROWER** | | **603. CASH TO/FROM SELLER** | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

| L. Settlement Charges | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Real Estate Broker Fees | $19,900.00 | | |
| *Division of commission (line 700) as follows:* | | | |
| 701. $ 8,400.00 | to Keller Williams Realty | | |
| 702.$ 8,490.00 | to Realty One Group | | |
| 703. Commission paid at settlement | | | 16,800.00 |
| 704. Negotiation Commission to Keller Williams Realty | | | 1,485.00 |
| **800. Items Payable in Connection with Loan** | | | |
| 801. Our origination charge | (from GFE#1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | (from GFE#2) | | |
| 803. Your adjusted origination charges | (from GFE#A) | | |
| 804. Appraisal fee | (from GFE#3) | | |
| 805. Credit report | (from GFE#3) | | |
| 806. Tax service | (from GFE#3) | | |
| 807. Flood certification | (from GFE#3) | | |
| 808. | | | |
| **900. Items Required by Lender to be Paid in Advance** | | | |
| 901. Interest from to to @ $ /day ( . days @ %) | (from GFE#10) | | |
| 902. Mortgage Insurance premium for month to | (from GFE#3) | | |
| 903. Homeowner's insurance for year to | (from GFE#11) | | |
| 904. for year to | | | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Initial deposit for your escrow account | (from GFE#9) | | |
| 1002. Homeowner's insurance months @ $ per month | | | |
| 1003. Mortgage insurance months @ $ per month | | | |
| 1004. Property taxes months @ $ per month | | | |
| 1005. months @ $ per month | | | |
| 1006. months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| **1100. Title Charges** | | | |
| 1101. Title services and lender's title insurance to The Cooper Castle L. | (from GFE#4) | | |
| 1102. Settlement or closing fee to The Cooper Castle Law Firm, LLP | | | 697.50 |
| 1103. Owner's title insurance to The Cooper Castle Law Firm, LLP | (from GFE#5) | | |
| 1104. Lender's title insurance | | | |
| 1105. Lender's title policy limit | | | |
| 1106. Owner's title policy limit | | | |
| 1107. Agent's portion of the total title insurance premium to Colorado American Title, LI | | | |
| 1108. Underwriter's portion of the total title insurance premium | | | |
| 1109. Document Preparation Fee to The Cooper Castle Law Firm, LLP | | | |
| 1110. Sub Escrow Fee to First American Title Insurance Company | | | |
| 1111. Endorsement Fee to First American Title Insurance Company | | | |
| 1112. Courier/Wire Fee to The Cooper Castle Law Firm, LLP | | | |
| 1113. Notary | | | |
| 1114. Short Sale Processing Fee to The Cooper Castle Law Firm, LLP | | | 595.00 |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Government recording charges to First American Title Insurance | (from GFE#7) | | |
| 1202. Deed $ 60.00; Mortgage $ 75.00; Releases $ | | | |
| 1203. Transfer taxes to First American Title Insurance Company | (from GFE#8) | | |
| 1204. County Transfer Tax Deed $ 1,224.00; Mortgage $ | | | |
| 1205. State tax/stamps Deed $ Mortgage $ | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Required services that you can shop for | (from GFE#6) | | |
| 1302. Sewer to Clark County Water Reclamation | | | 229.70 |
| 1303. Trash to Republic Services of Southern NV | | | 107.83 |
| 1304. Real Property Taxes to Clark County Treasuer | | | 728.79 |
| 1305. HOA Capital Contribution to Mountains Edge Master | | | 385.00 |
| 1306. HOA Transfer to Mountains Edge Master | | | 260.00 |
| 1307. Home Warranty | | | |
| 1308. SID / LID to Clark County Treasuer - SID | | | 623.92 |
| 1309. SUB HOA Capital Contribution to Las Colinas HOA | | | 42.00 |
| 1310. SUB HOA Transfer to Las Colinas HOA | | | 500.00 |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | 22,454.74 |



## COUNTER OFFER
### NO. _____1_____

ATTENTION: _____Ernesto Ahumada_____    COMPANY: _____Realty One Group_____
(Agent)                                                    (Name)
                                                    Christopher Burns

The [X] Offer [ ] Counter Offer made by: [ ] Seller [X] Buyer _____
                                                    (Name)

to [X] Buy [ ] Sell the real property commonly known as: _____9816 Almenia Street_____
                                                    Las Vegas, NV  89178
dated: _____February 28, 2012_____ is not accepted in its present form, but the following Counter Offer
is hereby submitted:

1. All items in the purchase contract requesting seller to pay including HOA &
CIC fees are submitted to the lien holder to pay. Any fees not paid for by the
lien holder will be renegotiated by both parties.
2. Property is sold AS IS and no repairs will be made. Buyer still retains the
right and is encouraged to have an inspection.
3. Any items left blank by the buyer are to be deemed waived by the buyer.
4. Close of Escrow to be on or before July 13, 2012.

OTHER TERMS: All other terms to remain the same as original Residential Purchase Agreement plus terms
agreed to in Counter Offer(s) No. 1
EXPIRATION: [X] Buyer [ ] Seller must respond by: _5:00_ [ ] AM [X] PM on (month) _____March_____,
(day) _15_, (year) _2012_. Unless this Counter Offer is accepted by execution below
and delivered to the [ ] Buyer's [ ] Seller's Broker before the above date and time, this Counter Offer shall
lapse and be of no further force and effect.

Date: 03/15/12                  _____

                                [ ] Buyer [X] Seller Abdel Assahouri              Signature

Time: 1:17 Pm                   _____

                                [ ] Buyer [X] Seller Mona Assahouri               Signature

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The undersigned [X] Buyer [ ] Seller hereby:
__X__ accepts the Counter Offer;
_____ accepts the terms of this Counter Offer subject to the attached Counter Offer No. _____ ; or
_____ rejects the Counter Offer.

Date: 3/14/12                   _____

                                [X] Buyer [ ] Seller Christopher Burns             Signature

Time: 9:51 AM                   _____

                                [ ] Buyer [ ] Seller                               Signature

Counter Offer Rev. 5/06                                    © 2006 Greater Las Vegas Association of REALTORS®